**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Charles Warner BAXTER, Appellee.**

Superior Court of Pennsylvania.

Argued March 12, 2008.

Filed Aug. 29, 2008.

Douglas G. McCormick, Asst. Dist. Atty., for Com., appellant.

Nicole Sloane, Erie, for appellee.

BEFORE: FORD ELLIOTT, P.J., STEVENS, ORIE MELVIN, LALLY–GREEN, KLEIN, BENDER, BOWES, GANTMAN, and SHOGAN, JJ.

OPINION BY ORIE MELVIN, J.:

¶ 1 This is a Commonwealth appeal from the order entered on March 8, 2006 in the Court of Common Pleas of Erie County that granted a new trial to Appellee, Charles Warner Baxter, on grounds that the prosecution of Appellee under 18 Pa. C.S.A. § 6111(g)(4) violated Appellee's due process rights as well as the separation of powers doctrine. After review, for the reasons that follow, we find there is no constitutional infirmity to the Commonwealth's prosecution of a prospective purchaser of a firearm for providing materially false statements in connection with that attempted purchase under the Pennsylvania Uniform Firearms Act of 1995, 18 Pa. C.S.A. §§ 6101, *et seq.* (the "Firearms Act"). Accordingly, we reverse the order granting a new trial and re-instate the jury's verdict and remand for further proceedings.

¶ 2 The facts and procedural background of this matter may be summarized as follows. On November 24, 2004, Appellee went to Gander Mountain to purchase a .380 caliber Bersa handgun. N.T. Trial, 1/27/06, at 42. In order to effectuate the transfer of the firearm, Appellee was required to complete two forms, the Pennsylvania State Police Form SP 4–113 (state

form) and the United States Department of the Treasury, Bureau of Alcohol, Tobacco & Firearms (ATF) Form 4473 (federal form), that would be used to determine the buyer's eligibility to receive a firearm under the Firearms Act. *Id.;* Commonwealth's Exhibit 1; *see* copy attached as Appendix A to Motion in Limine; Certified Record (C.R.) at 13. Under the Firearms Act, the state form is a one-page document known as an "application/record of sale" and requires every person purchasing a handgun in Pennsylvania from a licensed dealer to provide the dealer with identifying information including the purchaser's name, gender, race, social security number, address, and date of birth. *See* 18 Pa.C.S.A. § 6111(b)(1). The federal form, in addition to identifying information, asks the buyer a series of eligibility questions and directs the buyer at the beginning of the form to read the "Important Notices, Instructions and Definitions" that are included with the form. Additionally, the form apprises the buyer that the information provided will be used to determine whether he or she is prohibited under the law from receiving a firearm. At the bottom of the first page of the federal form, just above the signature line, the buyer is also advised in bold type, in relevant part, as follows:

> **I certify that the above answers are true and correct. I understand that answering "yes" to question 12a when I am not the actual buyer of the firearm is a crime punishable as a felony. I understand that a person who answers "yes" to any of the questions 12b through 12k is prohibited from purchasing or receiving a firearm.... I also understand that making any false oral or written statement, or exhibiting any false or misrepresented identification with respect to this transaction, is a crime punishable as a felony.**

ATF Form 4473, Commonwealth's Exhibits 1 & 2, C.R. at 13.

¶ 3 The instant prosecution arose from Appellee's answers to two questions on the federal form. Specifically, question 12(c) asks, "Have you been convicted in any court of a **felony,** or any other crime, for which the judge could have imprisoned you for more than one year, even if you received a shorter sentence including probation? (*See Important Notice 6, Exception 1.*)" Commonwealth's Exhibits 1 & 2. Appellee answered "No" to this question when, in fact, Appellee had four prior convictions for simple assault, resisting arrest, driving under the influence, and welfare fraud, each punishable by up to two years' incarceration. N.T. Trial, 1/27/06, at 68–69; Commonwealth's Exhibits 3–7. Question 12(f) on the federal form asks, "Have you ever been adjudicated mentally defective (*which includes having been adjudicated incompetent to manage your own affairs* ) or have you ever been committed to a mental institution?" C.R. at 13. Appellee also answered "No" to this question even though he was involuntarily committed on four different occasions for mental health treatment. N.T. Trial, 1/27/06, at 68–69; Commonwealth's Exhibits 3–7.

¶ 4 Once Appellee completed the forms, the sales clerk initiated a background check by transmitting the information to the Pennsylvania State Police. *Id.* at 45–46. Appellee's application was denied, and he was arrested for an outstanding bench warrant for a summary offense. *Id.* at 47, 86. Appellee was escorted to the magisterial district justice's office to resolve the warrant issue. Appellee returned to Gander Mountain on November 26, 2004, to reapply and again filled out the federal form and the state form. *Id.* at 57–58, 63–64. Once again, Appellee answered "No" to questions 12(c) and 12(f) on the federal form, and, following a background check,

his application was denied. *Id.* at 60–61; Commonwealth's Exhibit 2.

¶ 5 Appellee was arrested and charged with two counts of unsworn falsification to authorities and violating the Firearms Act.[1] Following a jury trial held January 27, 2006, Appellee was found guilty of all counts. On February 6, 2006, Appellee filed a "motion for judgment of acquittal and/or motion for a new trial." On March 8, 2006, the trial court granted the motion for a new trial citing to this Court's holding in *Commonwealth v. Kennedy,* 789 A.2d 731 (Pa.Super.2001). This timely appeal followed.[2]

¶ 6 The issue of first impression presented by this appeal is whether a prosecution under 18 Pa.C.S.A. § 6111(g)(4) is violative of due process and the separation of powers doctrine where the defendant gives false answers concerning matters included in a required federal form but not specifically listed in 18 Pa.C.S.A. § 6111(b)?[3]

¶ 7 "Because this presents a pure question of law, our standard of review is *de novo* and the scope of our review is plenary." *Commonwealth v. Dickson,* 591 Pa. 364, 372, 918 A.2d 95, 100 (2007) (citing *Craley v. State Farm Fire & Cas. Co.,* 586 Pa. 484, 499, 895 A.2d 530, 539 (2006)). Moreover,

> [t]his Court discussed the principles of vagueness in *Commonwealth v. Thur,* 2006 PA Super 208, 906 A.2d 552 (Pa.Super.2006), as follows:
>
> Due process demands that a statute not be vague. *Commonwealth v. Mayfield,* 574 Pa. 460, 832 A.2d 418, 422 (2003); *Commonwealth v. Barud,* 545 Pa. 297, 681 A.2d 162, 165 (1996).

A statute is vague if it fails to give people of ordinary intelligence fair notice as to what conduct is forbidden, or if they cannot gauge their future, contemplated conduct, or if it encourages arbitrary or discriminatory enforcement. *Commonwealth v. McCoy,* 2006 PA Super 33, 895 A.2d 18, 30 (Pa.Super.2006). A vague law is one whose terms necessarily require people to guess at its meaning. *Mayfield,* 832 A.2d at 422. If a law is deficient-vague-in any of these ways, then it violates due process and is constitutionally void. *Id.*

By contrast, to be valid, a penal statute must set forth a crime with sufficient definiteness that an ordinary person can understand and predict what conduct is prohibited. *McCoy,* 895 A.2d at 30. The law must provide reasonable standards which people can use to gauge the legality of their contemplated, future behavior. *Mayfield,* 832 A.2d at 422; *Barud,* 681 A.2d at 165; *Commonwealth v. Mikulan,* 470 A.2d at 1343 (Pa.1983) (plurality); *McCoy,* 895 A.2d at 30.

At the same time, however, the void for vagueness doctrine does not mean that statutes must detail criminal conduct with utter precision. "Condemned to the use of words, we can never expect mathematical certainty from our language." *Mikulan,* 470 A.2d at 1343 (quoting *Grayned v. City of Rockford,* 408 U.S. 104, 110–12, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)). Indeed, due process and the void for vagueness doctrine are not intended

---

1. 18 Pa.C.S.A. §§ 4904(a)(1) and 6111(g)(4) ("Sale or transfer of firearms"), respectively.

2. The Commonwealth may take an appeal as of right from an order granting a new trial where the Commonwealth claims that the tri-

al court committed legal error. Pa.R.A.P. 311(a)(6).

3. The Commonwealth and the trial court have complied with Pa.R.A.P.1925.

to elevate the "practical difficulties" of drafting legislation into a "constitutional dilemma." *Id.* (quoting *Colten v. Kentucky*, 407 U.S. 104, 110, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972)). Rather, these doctrines are rooted in a "rough idea of fairness." *Id.* As such, statutes may be general enough to embrace a range of human conduct as long as they speak fair warning about what behavior is unlawful. *Id.* Such statutes do not run afoul of due process of law. *Id.*

\* \* \* \*

Finally, when evaluating challenges to a statute-whether those challenges are based on vagueness ... or any other considerations-we must also keep in mind that there is a strong presumption that legislation is constitutional. *Pennsylvanians Against Gambling Expansion Fund, Inc., et al. v. Commonwealth of Pennsylvania*, 583 Pa. 275, 877 A.2d 383, 393 (2005). A party challenging legislation bears a heavy burden to prove otherwise. *Id.* Accordingly, this Court will strike the statute in question only if [the challenger] convinces us that it clearly, palpably and plainly violates the federal or state constitutions. *McCoy*, 895 A.2d at 30.

*Thur*, 906 A.2d at 560, 561.

In addition to the foregoing principles, we note that vagueness challenges may be of two types. First, a challenge of facial vagueness asserts that the statute in question is vague when measured against any conduct which the statute arguably embraces. *Commonwealth v. Nesbit*, 394 Pa.Super. 287, 575 A.2d 633, 635 (Pa.Super.1990). Second, a claim that a statute is vague as applied contends the law is vague with regard to

the particular conduct of the individual challenging the statute. *Id.*

For a court to entertain challenges of facial vagueness, the claims must involve First Amendment issues. *Mayfield*, 832 A.2d at 422. When a case does not implicate First Amendment matters, vagueness challenges are to be evaluated in light of the facts at hand—that is, the statute is to be reviewed as applied to the defendant's particular conduct. *Id.*

*Commonwealth v. Habay*, 934 A.2d 732, 737–738 (Pa.Super.2007).

¶ 8 The trial court in its opinion explained its reasons for granting a new trial by adopting the rationale of the Florida District Court of Appeals in the case of *State v. Watso*, 788 So.2d 1026 (Fla.App. 2nd Dist.2001), wherein the court found a similar statute unconstitutional as violative of due process and the separation of powers doctrine and, further relying upon dicta in a footnote in *Kennedy, supra*, at 735, which noted that only the legislature had the authority to expand the scope of the questions required by statute on a firearms application.

¶ 9 In essence, the trial court found that because § 6111(b) specifically lists only identifying information as being required from a prospective purchaser, Appellee was not put on fair notice by § 6111(g)(4) that false statements to any additional questions (such as those on the federal form) could subject him to prosecution in this Commonwealth. Consequently, the trial court concluded that § 6111(g)(4), as applied in this case to support a state prosecution, violated due process.[4] Further, the trial court found it was violative of the separation of powers doctrine because the Commonwealth, in effect, endorsed the federal form's additional ques-

4. Accordingly, we will review this matter as applied to the Appellee's particular conduct.

tions by charging Appellee for providing allegedly false information thereon. In doing so, the trial court concluded the Commonwealth operated outside the statutory framework formulated by the legislature for conducting background checks. For the reasons that follow, we find the trial court's reliance on *Watso* and *Kennedy* is misplaced.

¶ 10 It is well settled that "when the judiciary is required to resolve an issue concerning the elements of a criminal offense, its task is fundamentally one of statutory interpretation, and its overriding purpose must be to ascertain and effectuate the legislative intent underlying the statute." *Commonwealth v. Reaser*, 851 A.2d 144, 148 (Pa.Super.2004), *appeal denied*, 581 Pa. 674, 863 A.2d 1145 (2004). *See also* 1 Pa.C.S.A. § 1921(a) (providing that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly" and that "[e]very statute shall be construed, if possible, to give effect to all its provisions.") and *Koken v. Reliance Ins. Co.*, 586 Pa. 269, 287, 893 A.2d 70, 81 (2006) (noting that "[g]enerally, the best indication of legislative intent is the plain language of the statute.") (citations omitted). Further, "strict construction does not require that the words of a criminal statute be given their narrowest meaning or that the lawmaker's evident intent be disregarded." *Commonwealth v. Duncan*, 456 Pa. 495, 497, 321 A.2d 917, 919 (1974) (internal quotation omitted).

¶ 11 To ascertain and effectuate our General Assembly's intention here, it is first necessary to understand the broader context in which the two statutory sections involved (18 Pa.C.S.A. §§ 6111(b)(1) and 6111(g)(4)) exist. In general, federal law requires that background checks on potential gun purchasers (such as Appellee) be conducted pursuant to the Brady Handgun Violence Prevention Act, 18 U.S.C.A. §§ 921 *et seq.* ("Brady Act"). The Brady Act required the Attorney General to establish a "National Instant Criminal Background Check System (NICS) to be contacted by any licensed importer, licensed manufacturer, or licensed dealer of firearms for information as to whether the transfer of a firearm to any person ... would be in violation of Federal or state law." 28 C.F.R. § 25.1 (1998). The Brady Act further mandates that a licensed firearms seller must have a purchaser complete the federal form in order for the seller to determine if it may lawfully sell or deliver the firearm. *See* 18 U.S.C.A. § 923. Pursuant to 18 U.S.C.A. § 922, the purchaser must answer "no" to all of the questions (except the first[5]) on the federal form and pass a background check in order to complete the sale. In Pennsylvania, a licensed firearms seller must obtain this required federal background check through the Pennsylvania State Police, which serves as the point of contact ("POC") for the implementation of the Brady Act in our Commonwealth.[6] Under the Brady Act and the Firearms Act, the mandate of the State Police as the POC is to conduct the required background checks to ensure that firearms are not purchased by prohibited persons.

¶ 12 The federal form asks a number of questions about the purchaser's back-

---

**5.** The federal form provides that every question must be answered "no" except for the first question which asks if the purchaser is the actual purchaser acquiring the firearm.

**6.** 28 C.F.R. § 25.6(a) (1998) indicates that each state makes the determination as to how

a licensed dealer is to initiate the background checks. Pursuant to 18 Pa.C.S.A. § 6111.1, the General Assembly has designated the Pennsylvania State Police to serve as the POC.

ground—for example, whether the purchaser has been convicted of a felony or a crime carrying a sentence of one-year incarceration or more, has ever been adjudicated mentally defective or committed to a mental institution, is an illegal alien, has been convicted of a crime relating to domestic violence, or is a fugitive from justice. In 18 Pa.C.S.A. § 6105 (Persons not to possess, use, manufacture, control, sell or transfer firearms), our General Assembly identifies the persons not permitted in this Commonwealth to possess, use, control, sell, transfer or manufacture a firearm. Section 6105(a) provides the basic prohibition.[7] Subsection 6105(b), in turn, enumerates 37 specific criminal offenses (in addition to any equivalent offense), which render the person subject to the prohibition contained in Section 6105(a). Section 6105(c) further identifies "criteria" that render the person subject to the prohibition in Section 6105(a). Notable for our purposes here is that Section 6105(c) provides that the following persons are subject to the prohibition: a fugitive from justice (6105(c)(1)); a person convicted of an offense under the Controlled Substance, Drug, Device and Cosmetic Act, or any equivalent federal or state statute that may be punishable by a term of imprisonment exceeding two years (6105(c)(2)); a person adjudicated as an incompetent or who has been involuntarily committed to a mental institution (6105(c)(4)); an illegal alien (6105(c)(5)); and a person who has been convicted of an offense related to domestic violence (6105(c)(6) and (9)). It is evident that the enumerated offenses and prohibited criteria set forth in Section

6105(b) and (c) closely track the criteria making possession of a firearm unlawful as set forth under federal law pursuant to 18 U.S.C.A. § 922(g) and elicited by the federal form.[8]

¶ 13 It is against this background that Section 6111(g)(4) must be read. This provision provides:

> (4) Any person, purchaser or transferee who **in connection with the purchase,** delivery or transfer **of a firearm** under this chapter knowingly and intentionally makes **any** materially false oral or written statement or willfully furnishes or exhibits any false identification intended or likely to deceive the seller, licensed dealer or licensed manufacturer commits a felony of the third degree.

18 Pa.C.S.A. § 6111(g)(4) (emphasis added). This statutory provision is broadly worded. Further, when the Firearms Act is read as a whole, we glean that the General Assembly's intention was to prohibit certain persons from possessing a firearm within this Commonwealth. Critically, we can discern no evidence that the General Assembly intended for Section 6111(g)(4) to be read solely in conjunction with Section 6111(b)(1) (which, we note, purports to identify duties of the seller, not the purchaser) and to therefore only authorize prosecution for false statements pertaining to the identifying information required to be provided by Section 6111(b)(1). Quite the contrary, Section 6111(g)(4) references the entire chapter, *i.e.,* the Firearms Act, whose "apparent purpose . . . is to regulate the possession

---

**7.** 18 Pa.C.S.A. § 6105(a)(1) provides: "A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell,

transfer or manufacture a firearm in this Commonwealth."

**8.** We recognize that Section 6105(c) does not include dishonorable discharge as a prohibited criterion and that the federal form does elicit information as to that criterion.

and distribution of firearms, which are highly dangerous and are frequently used in the commission of crimes." *Commonwealth v. Corradino*, 403 Pa.Super. 251, 588 A.2d 936, 940 (1991). Therefore, we conclude that the General Assembly's intention was to provide authority for the prosecution of persons who make **any** materially false statement in connection with the purchase of a firearm in this Commonwealth.

¶ 14 Furthermore, we find that any knowingly false statement given by a person in connection with the purchase of a firearm—even if given in response to the questions on the federal form—is "material" and would subject that person to prosecution.[9] Limiting the Commonwealth to prosecuting only those persons who provide false identifying information in answer to the Pennsylvania form ignores the Commonwealth's duty as a POC for the Brady Act and the General Assembly's obvious intention in enacting the Firearms Act and, specifically, Section 6111(g)(4). A potential gun purchaser is put on notice by Section 6105 as to who is prohibited from possessing a firearm in this Commonwealth. Thus, when a prospective purchaser completes an application in connection with the attempted acquisition of a firearm he knows, or should know, that if he or she is such a prohibited person, as defined by Section 6105, the application will be denied.[10] If the only false information that would subject an applicant to prosecution concerns the identification information contained in Section 6111(b)(1),

then any known convicted felon (or other prohibited person) may attempt to purchase a gun with impunity in the hopes that a glitch in the background check may fail to reveal their status. Such an absurd result could not have been intended by the General Assembly. Accordingly, when Section 6111(g)(4) is read in the context of the Firearms Act as a whole, it provides sufficient definiteness that an ordinary person can understand and predict what conduct is prohibited. *Habay*, 934 A.2d at 737.

¶ 15 Furthermore, we are not persuaded to adopt the rationale of *Watso, supra*, to decide this issue of first impression, because the Florida statute implicated therein, while similar, is not as expansive in scope as Section 6111(g)(4). The Florida statute, Fla. Stat. Ann. § 790.065(12)(a), provided that "[a]ny potential buyer or transferee who willfully and knowingly provides false information or false or fraudulent identification commits a felony of the third degree[.]" Noticeably absent from this provision are any of the expansive phrases found in our statute, such as "in connection with the purchase ... of a firearm under this chapter" and "any materially false oral or written statement." It is settled law that "[w]hen construing a statute, ... [this court] must begin with a presumption that our legislature did not intend any statutory language to exist as mere surplusage." *Wiernik v. PHH U.S. Mortg. Corp.*, 736 A.2d 616, 621 (Pa.Super.1999), *appeal denied*, 561 Pa. 700, 751 A.2d 193 (2000). We find that imposing

---

9. We note that, while this issue has not previously been addressed by the appellate courts of this Commonwealth, there have already been successful prosecutions under Section 6111(g)(4) for false statements provided on the federal form in connection with a firearm purchase in this Commonwealth. *See Commonwealth v. Emmil*, 866 A.2d 420 (Pa.Super.2005) (affirming order denying suppression following conviction pursuant to 18 Pa. C.S.A. § 6111(g)(4) for making false statements to authorities in connection with a firearm purchase); *see also Commonwealth v. Turner*, 70 Pa. D. & C.4th 19 (Pa.Com.Pl. 2004).

10. In fact, the federal form specifically spells this out for the applicant.

the narrow view embraced in *Watso* serves only to impermissibly narrow and limit our broadly written statute in a manner that runs contrary to its plain language and subverts the General Assembly's obvious intention.

¶ 16 Instead, we find persuasive the reasoning of the Supreme Court of New Hampshire in *State of New Hampshire v. Brown*, 155 N.H. 590, 927 A.2d 493 (2007), which permitted prosecution under a similar broadly worded state law for false statements provided on the federal form. In *Brown*, the defendant falsely responded to Question 12(i) [11] on the federal form and was charged with giving false information to secure a firearm under the New Hampshire statute, N.H.Rev.Stat. Ann. § 159:11. This statute provided that "[a]ny person who, in purchasing or otherwise securing delivery of a pistol, revolver, or other firearm, gives false information or offers false evidence of his identity, shall be guilty of a misdemeanor for the first offense, and be guilty of a class B felony for any subsequent offense." When the defendant in *Brown* sought to plead guilty, the trial court rejected the plea, ruling that "[N.H.Rev.Stat. Ann. §] 159:11 only criminalizes conveying false information that is pertinent to the acquisition of a firearm under New Hampshire law." *Id.* at 591, 927 A.2d at 494. The State appealed, and the Supreme Court of New Hampshire recognized as the question before it "whether [N.H.Rev.Stat. Ann. §] 159:11 criminalizes conveying false information in the purchase or acquisition of a pistol, revolver, or other firearm whether or not the false information pertains to New Hampshire gun acquisition laws." *Id.* at 591, 927 A.2d at 494. In reviewing the statute, the Supreme Court in *Brown* recognized that "the legislature used plain

language to criminalize the provision of false information in obtaining a firearm" and reasoned therefore that "the statute does not limit the type of information that it criminalizes when conveyed in the acquisition of a firearm." *Id.* Accordingly, the *Brown* court held that "the plain language of [N.H.Rev.Stat. Ann. §] 159:11 criminalizes conveying false information, including information upon a federal form that is false based upon federal definitions of the form's terms." *Id.* at 592, 927 A.2d at 494. We find this rationale, as opposed to that in *Watso*, more closely applies to Section 6111(g)(4) as written and is more in line with our General Assembly's intention.

¶ 17 We further reject any reliance here on the factually distinguishable case of *Kennedy, supra.* In *Kennedy*, this Court was called upon to determine whether the evidence was sufficient to sustain the defendant's conviction for unsworn falsification to authorities. In that case, the appellant completed a different Pennsylvania form, known as SP 4–127 and captioned "Application for a Pennsylvania License to Carry Firearms," and answered "No" to the question: "Have you ever been convicted of an offense under the act . . . known as The Controlled Substance, Drug, Device and Cosmetic Act?" Appellant testified that he made a mistake due to the confusing definitions provided on the back of the form, which he interpreted as requiring the acknowledgement of only those convictions that resulted in the imposition of imprisonment exceeding two years. This Court agreed that the form contained "internal inconsistencies" and found that the jury impermissibly "ignored the unrefuted account that [a]ppellant's act of filling out [the form] was the product of a mistake and not the knowing and intentional act of one seeking to deceive."

---

**11.** This question reads as follows: "Have you been convicted in any court of a misdemeanor crime of domestic violence?" *Brown,* at 591, 927 A.2d at 493.

*Kennedy,* 789 A.2d at 734. Additionally, the *Kennedy* panel, in a footnote, found that Form SP 4–127 improperly expanded the scope of Section 6105(c)(2) by prohibiting a person having any violation of The Controlled Substance, Drug, Device and Cosmetic Act (Act) from securing a gun permit when the statutory provision prohibited only those persons whose violation of the Act carried a penalty in excess of two years. *See id.* at n. 3. Thus, the Kennedy panel concluded that the form improperly expanded the scope of the statute and subverted the General Assembly's clear intention. *Id.* Here, however, Section 6111(g)(4) is broadly worded and, thus, when read in conjunction with the Firearms Act as a whole, clearly places a person on notice that making **any** materially false statement in connection with the purchase of a firearm—including on the federal form—will subject that person to prosecution by this Commonwealth for a felony of the third degree. As such, the Commonwealth is not expanding the scope of the criminal statute and operating outside the statutory framework as in *Kennedy;* rather, it is exercising the authority expressly given to it by the General Assembly.

¶ 18 In summation, prosecution under Section 6111(g)(4) is not dependent solely upon the prospective purchaser of a firearm providing false information as to his or her identifying information as listed in Section 6111(b)(1). Rather, the plain language of Section 6111(g)(4), when taken in proper context of the statute as a whole, clearly places prospective purchasers on notice that they will be subject to prosecution for a third degree felony if they make any oral or written materially false statement in connection with that attempted purchase of a firearm.

¶ 19 Order reversed and jury verdict reinstated. Case remanded for sentencing. Jurisdiction relinquished.

¶ 20 STEVENS, LALLY–GREEN, KLEIN, BOWES, GANTMAN and SHOGAN, JJ join.

¶ 21 Judge KLEIN files a Concurring Statement which is joined by: Judge LALLY–GREEN and Judge BOWES.

¶ 22 P.J. FORD ELLIOTT files a dissenting opinion which is joined by Judge BENDER.

Concurring Statement by KLEIN, J.:

¶ 1 I fully agree with and join in the thorough and cogent opinion of my distinguished colleague, the Honorable Joan Orie Melvin. I write separately only to note that numerous other issues were raised by defendant Baxter and our decision should be without prejudice to his right to raise them again after the sentence is imposed.

¶ 2 LALLY–GREEN, and BOWES, JJ. Join.

Dissenting OPINION BY FORD ELLIOTT, P.J.

¶ 1 I respectfully dissent. There is no allegation that Baxter gave false or misleading answers to any questions on the state police form required by Section 6111, including his name, address, date of birth, and Social Security number. Rather, these charges arise from his allegedly false answers to questions on the federal ATF Form 4473. I would reject the Commonwealth's argument that by its plain language, the statute applies to "any materially false oral or written statement" and so informs persons of ordinary intelligence that *any* false statement, whether oral or written, potentially gives rise to criminal liability. In my view, to fall within the boundaries of the statute, the allegedly materially false statement must relate to one of the pieces of identifying information

delineated in Section 6111(b); *e.g.*, date of birth, Social Security number, address, *etc.*

¶ 2 To the extent the Commonwealth argues that any false answer on either the state or federal form subjects a potential gun purchaser to criminal liability under Section 6111(g)(4), I would reject such an argument out of hand as going well beyond the scope of the statute. While federal authorities may ask whether Baxter was dishonorably discharged from the military or has ever renounced U.S. citizenship, questions which appear on Form 4473, such information is well beyond the purview of Section 6111 and a false answer cannot subject him to criminal prosecution thereunder.[12]

¶ 3 "[A] criminal statute must give reasonable notice of the conduct which it proscribes to those who are subject to it." *Commonwealth v. Noel*, 579 Pa. 546, 550, 857 A.2d 1283, 1285 (2004), citing *Commonwealth v. Barud*, 545 Pa. 297, 303–305, 681 A.2d 162, 165 (1996). "A defendant must have fair notice that his conduct is criminal." *Commonwealth v. Aircraft Service International Group*, 917 A.2d 328, 330 (Pa.Super.2007).

¶ 4 I would find that Baxter was not put on fair notice that his answers to the additional questions posed by the federal Form 4473 could subject him to criminal liability under Section 6111(g)(4). Section 6111(b) specifically lists the information a potential buyer must provide to the dealer on the Pennsylvania State Police Form SP 4–113. This list includes only the buyer's name, address, birthdate, gender, race, physical description, and Social Security number, as well as the date of application and caliber, barrel length, make, model, and serial number of the firearm to be purchased. 18 Pa.C.S.A. § 6111(b)(1). Nothing in Section 6111(b) requires the potential buyer to disclose his or her criminal or mental health background. Rather, the statutory scheme contemplates that the buyer will provide identifying information to the dealer, and the dealer will then request a criminal background check from the Pennsylvania State Police based on that information. 18 Pa.C.S.A. § 6111(b)(1.1)(iii). So that the criminal background check is not thwarted, Section 6111(g)(4) makes it a crime for the potential buyer to provide false identifying information.

¶ 5 In *State v. Watso*, 788 So.2d 1026 (Fla.App. 2nd Dist.2001), the Florida intermediate appellate court, in the face of substantially similar facts, held that state prosecution of a potential buyer based on allegedly false answers to additional questions on the ATF form, including whether the potential buyer has ever been convicted of a felony or has ever been committed to a mental institution, is unconstitutional as violative of due process and the separation of powers doctrine. While the majority chooses to dismiss *Watso*, I find its reasoning to be persuasive.[13] Applying the *Watso* court's rationale to the facts of the case *sub judice:*

> [N]othing in the statute puts the potential buyer on notice that he or she will be asked questions about his or her use

---

12. Of course, false answers to questions on the ATF Form 4473 could perhaps subject Baxter to *federal* prosecution. *See* 18 U.S.C. § 922(a)(6).

13. The Florida statute provides, "Any potential buyer or transferee who willfully and knowingly provides false information or false or fraudulent identification commits a felony of the third degree...." *Watso* at 1028, quoting § 790.065(12)(a), Fla. Stat. (Supp.1998). As in the instant case, the charge against Watso was predicated on his allegedly false answer to a question on the *federal* ATF form concerning whether he had ever been convicted of a felony. *Id.*

of marijuana, his or her psychological background, or the circumstances surrounding his or her discharge from the armed forces. Moreover, nothing in the statute puts the potential buyer on notice that he or she will be asked to independently corroborate the criminal background check to be done by the [state police]. Because the potential buyer is not advised by the statute that answers to the [federal Form 4473's] additional questions could subject him or her to criminal prosecution, any prosecution under section [6111(g)(4)] for providing false answers to these additional questions constitutes a due process violation.

*Watso*, 788 So.2d at 1029–1030.

¶ 6 In my opinion, Baxter was not put on fair notice by the statute that false answers to any additional questions such as those set forth in the ATF Form 4473 could potentially expose him to criminal prosecution under Pennsylvania law. Therefore the statute, as applied by the Commonwealth in this case, violated due process. In addition, I note that pursuant to the rules of lenity and strict construction, any ambiguity must be resolved in Baxter's favor. The rule of lenity is a rule that ensures "fairness to persons subject to the law by requiring penal statutes to give clear and unequivocal warning in language that people generally would understand, as to what actions would expose them to liability for penalties and what the penalties would be." *See Commonwealth v. Reaser*, 851 A.2d 144, 149 (Pa.Super.2004), *appeal denied*, 581 Pa. 674, 863 A.2d 1145 (2004) (citation omitted).

¶ 7 I would also agree with the trial court's conclusion that the Commonwealth's prosecution of Baxter violated separation of powers, as only the Legislature has authority to expand the scope of the questions required by statute on a firearms application. (Trial court opinion, 5/25/06 at 5.) The Legislature cannot delegate to the executive branch power to declare what acts shall constitute criminal offense, nor may any other branch of government usurp the Legislature's authority to define a crime in Pennsylvania. Pennsylvania Constitution, Art. 2, Section 1.

¶ 8 "[T]he [Commonwealth] has, in effect, attempted to expand the scope of criminal conduct under section [6111(g)(4)] by making it a third-degree felony to provide false answers to these additional questions. This is an unconstitutional usurpation of the legislature's function." *Watso, supra* at 1029. As the trial court states, a firearms dealer can ask whatever questions in addition to those on the Pennsylvania state police form it wants to, including information sought by the ATF; while a potential buyer's answers to these "additional" questions might serve as a legitimate basis for denying purchase, they do not constitute a crime under Section 6111(g)(4). (Trial court opinion, 5/25/06 at 6.) The Commonwealth has effectively endorsed the federal Form 4473 by charging Baxter for providing allegedly false information thereon. In doing so, the Commonwealth operates outside the statutory framework formulated by the Legislature for conducting background checks to determine who is eligible to purchase firearms in Pennsylvania.

¶ 9 For the above reasons, I would hold that Baxter could not be prosecuted under Section 6111(g)(4) for giving allegedly false answers to questions not designed to elicit the information required by Section 6111(b). Therefore, I am compelled to dissent.[14]

¶ 10 BENDER, J. joins.

---

**14.** I acknowledge that there is a proposed amendment to Section 6111(g)(4) that would make it a third-degree felony for a prospective purchaser of a firearm to make "any materially false written statement, *including a statement on any form promulgated by Federal or State agencies.*" H.B. 1845 of 2007 (emphasis added). This amendment, if enacted, would prospectively clarify the offense as defined by Section 6111(g). However, this obviously would not affect my disposition of the matter *sub judice.*