**[J-118-2019]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 2 EAP 2019 |
| | : | |
| Appellee | : | Appeal from the Judgment of |
| | : | Superior Court entered on |
| | : | 8/28/2018 at No. 1028 EDA 2017 |
| v. | : | affirming the Judgement of |
| | : | Sentence entered on 2/2/2017 in |
| | : | the Court of Common Pleas, |
| BRAHIM SMITH, | : | Philadelphia County, Criminal |
| | : | Division at No. CP-51-CR-0006922- |
| Appellant | : | 2014. |
| | : | |
| | | SUBMITTED: December 12, 2019 |

**OPINION**

**JUSTICE DOUGHERTY**                                   **DECIDED:  July 21, 2020**

In this discretionary appeal, we consider whether a person who is subject to a bench warrant is a "fugitive from justice" such that he is a "person not to possess, use, control, sell, transfer or manufacture" a firearm pursuant to Section 6105 of the Pennsylvania Uniform Firearms Act of 1995 (UFA).[1]  We conclude the active bench warrant for appellant Brahim Smith rendered him a fugitive from justice prohibited from possessing a firearm and he was properly convicted under the statue.[2]  18 Pa.C.S.

_____

[1] 18 Pa.C.S. §§6101-6187.

[2] Justice Wecht disagrees with this holding, but he admits that a bench warrant may render an individual a "fugitive from justice" under "appropriate circumstances[.]" Dissenting Op. at 1 (Wecht, J.).  Justice Wecht then offers a treatise on the history of the term "fugitive" in federal jurisprudence that is elucidating and interesting, but bears no relevance to the present appeal and the very limited nature of the question asked and

§6105(c)(1) (" . . . the following persons shall be subject to the prohibition of subsection (a) [from possessing, using, controlling, selling, transferring or manufacturing a firearm]: (1) A person who is a fugitive from justice."). We affirm the order of the Superior Court upholding appellant's judgment of sentence.

In the early afternoon of April 21, 2014, police were called to investigate a crime in progress in the area of 12th Street and Glenwood Avenue in Philadelphia. *See* Trial Ct. Op. at 1-2. The radio call described the suspect as a black male, wearing a black hat, black polo shirt and tan cargo pants. *Id.* at 2. Officers Alberto Ortiz and Michael Edwards arrived at the scene within two minutes of the radio call. *Id.* Sergeant Michael Soto and his partner Officer Sylvester White, were already on location. *Id.* While Sergeant Soto was speaking with the complainant, he observed a pair of feet hanging out of the sliding door of a green minivan parked approximately halfway down the block on 12th Street. *Id.* Sergeant Soto, Officer White and the complainant directed Officers Ortiz and Edwards to the minivan, where they found appellant as the sole occupant of the van. *Id.* As Officers Ortiz and Edwards exited their patrol car, appellant stood from his seat on the floor of the van and walked toward them. *Id.* The officers were then able to observe that appellant matched the description provided by dispatch in the radio call. *Id.* at 2-3.

---

answered here. We must determine only whether the record was sufficient to sustain appellant's conviction pursuant to a specific statute, namely Section 6105 of the UFA. The scope of our inquiry is especially refined because the central piece of evidence below was a stipulation that appellant was indeed subject to a bench warrant pursuant to a criminal docket, and that bench warrant rendered him ineligible to carry a firearm. It is only through the lens of this concession by appellant himself that we must decide his "fugitive" status.

Officer Brittany Kelly[3] also responded to the radio call and arrived at the scene approximately five minutes after Officers Ortiz and Edwards. *Id.* at 3. Officer Kelly looked inside the van and saw a firearm in an open cardboard box located between the second and third rows of the minivan, approximately one foot away from the van's sliding door where appellant had been sitting. *Id.* Officer Kelly alerted Officer Ortiz of her discovery, and he instructed her to hold the scene, which she did until Officer Ortiz returned thirty minutes later. *Id.* at 4. During this time, no one else approached or accessed the van, and the gun was not moved. *Id.* The gun was eventually determined to be a Bryco Arms .38 automatic handgun, with one live round in the chamber and six rounds in the magazine. *Id.*

Appellant was arrested and charged with, *inter alia*, the following counts under the UFA: (1) Section 6106 — Firearms Not to be Carried Without a License;[4] (2) Section 6108 — Carrying Firearms on Public Streets or Public Property in Philadelphia;[5] and (3) Section 6105 — Persons Not to Possess Firearms.[6] Appellant proceeded to a bifurcated trial on October 12, 2016 with the Section 6106 and Section 6108 charges proceeding to trial before a jury. The Commonwealth introduced a Certificate of Non-Licensure for appellant, demonstrating he did not have a license to carry a firearm or a valid firearm permit on April 21, 2014, the date of the incident. *See* Trial Ct. Op. at 5. The jury returned a verdict of guilty on the charge under Section 6106 (firearms not to be carried without a license), and not guilty on the charge under Section 6108 (carrying a firearm on a public

---

[3] Officer Kelly was accompanied by Officer Alicea, whose first name is not provided in the record.

[4] 18 Pa.C.S. §6106.

[5] 18 Pa.C.S. §6108.

[6] 18 Pa.C.S. §6105.

street in Philadelphia). *See* N.T. 10/14/16 at 10. A bench trial was then held on the remaining charge for persons not to possess firearms pursuant to Section 6105.

Section 6105 provides, in pertinent part, as follows:

> **(a) Offense defined. —**
>
> (1) A person . . . whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.
>
> \*      \*      \*
>
> **(c) Other persons. —** . . . the following persons shall be subject to the prohibition of subsection (a):
>
> (1) A person who is a fugitive from justice. This paragraph does not apply to an individual whose fugitive status is based upon a nonmoving or moving summary offense under Title 75 (relating to vehicles).

18 Pa.C.S. §6105. The parties stipulated that, at the time of the offense on April 21, 2014, appellant was subject to an active bench warrant, issued on April 3, 2014. Specifically, the stipulation provided:

> There's also been a stipulation by and between counsel that at the time of this offense on April 21[st] of 2014, [appellant] Brahim Smith, had an active bench warrant, which was issued on April 3[rd] of 2014 under CP-51-CR-0003923-2011. That bench warrant was lifted on May 1[st] of 2014, which would make him ineligible for -- a prohibited person from carrying a firearm under 6105 graded as a misdemeanor of the first degree.

*See* N.T. 10/14/16 at 20-21. The stipulation agreed to by counsel for both parties was "that this defendant is ineligible to possess the firearm, he was prohibited specifically because of the bench warrant as well as the [criminal] docket indicating that there was an active bench warrant at the time." *Id.* at 23.

Notwithstanding the stipulation regarding the bench warrant, appellant argued to the trial court there was insufficient evidence he violated Section 6105(c)(1) because the

Commonwealth could not prove he was a fugitive from justice. *See* Trial Ct. Op. at 11. The Commonwealth responded the existence of the active bench warrant rendered appellant a fugitive from justice for purposes of the statute. The trial court agreed with the Commonwealth, stating "[b]ench warrants are routinely issued by the court when a defendant has either failed to attend a required court hearing or fails to report to his probation officer as required and ordered by the court. The sole reason these warrants are issued is because an offender is not complying and reporting as instructed." *Id.* at 12. The trial court thus found there was sufficient evidence to support appellant's conviction under Section 6105(c)(1), and subsequently sentenced him to three to six years' incarceration for the charge of firearms not to be carried without a license under Section 6106, and a consecutive term of four years' probation for persons not to possess a firearm under Section 6105. *See* Superior Ct. Op. at 4.

On appeal to the Superior Court, appellant renewed his argument that the Commonwealth failed to prove he was a fugitive from justice as defined by Section 6105(c)(1).[7] The Superior Court affirmed the judgment of sentence based on the trial court's finding there was sufficient evidence appellant was a fugitive due to his outstanding bench warrant at the time of the April 21, 2014 incident. *Id.* at 8.

Appellant filed a petition for allowance of appeal, and we granted review to address the following question:

> Did not the Superior Court err in finding the evidence sufficient to convict [appellant] for violating 18 Pa.C.S.A. §6105 because he was specifically convicted under §6105(c), and the Commonwealth failed to prove that he was a "fugitive from justice" as that term is meant in §6105(c)?

---

[7] Appellant challenged other aspects of the trial court proceedings but those claims are not relevant to the present appeal.

*Commonwealth v. Smith*, 203 A.3d 210 (Pa. 2019) (*per curiam*). When presented with a sufficiency claim like appellant's, we must determine "whether the evidence proved at trial established the appellant's guilt of each element of the offenses charged beyond a reasonable doubt[.]" *In Interest of J.B.*, 189 A.3d 390, 408 (Pa. 2018), *quoting Commonwealth v. Bausewine*, 46 A.2d 491, 493 (Pa. 1946) ("The facts and circumstances proved must, in order to warrant a conviction, be such as to establish the guilt of the defendant . . . beyond a reasonable doubt."). "Evidentiary sufficiency is a question of law and, therefore, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Sanchez*, 36 A.3d 24, 37 (Pa. 2011), *citing Commonwealth v. Meals*, 912 A.2d 213, 218 (Pa. 2006). When performing a sufficiency review, we consider whether the evidence introduced at trial and all reasonable inferences derived therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish the elements of the offense beyond a reasonable doubt. *Id.*

Appellant contends there was insufficient evidence to support his conviction under Section 6105 because the Commonwealth failed to demonstrate he was a fugitive from justice. *See* Appellant's Brief at 13. Appellant argues the term "fugitive from justice" is not defined by statute, and its most common meaning refers to a person who has fled the jurisdiction of a court after having committed a crime. *Id.* In a departure from his argument before the Superior Court, appellant claims the common meaning of the term "fugitive from justice" is associated with extradition, and does not easily transfer to the use of the term in Section 6105. According to appellant, the term must be defined using principles of statutory interpretation.

Appellant submits "the best indicator of the legislature's intent is the plain language of the statute." *Id.* at 21, *citing Allstate Life Ins. Co. v. Commonwealth*, 52 A.3d

1077, 1080 (Pa. 2012). Relying on the 1979 edition of Black's Law Dictionary, appellant claims a "fugitive from justice" must have "committed a crime [and fled] from the jurisdiction of the court where the crime was committed[.]" *Id.*, *quoting* BLACK'S LAW DICTIONARY (5th ed. 1979), 604. Appellant notes Black's defines the term as "[o]ne who flees; used in criminal law with the implication of flight, evasion, or escape from arrest, prosecution or imprisonment." *Id.* at 22, *quoting* BLACK'S LAW DICTIONARY (5th ed. 1979), 604. Appellant asserts he cannot be considered a fugitive from justice because he was, at worst, a parole violator who did not actively flee prosecution of a crime.[8] Appellant contends he merely encountered police while he was sitting in a parked minivan in his presumptive home town of Philadelphia, and was not in flight from prosecution. *Id.* at 21-22.

Appellant further notes the standard dictionary definition of "fugitive" also contains an element of flight from prosecution. *Id.* at 23-24. Appellant argues the record here does not support a finding he was fleeing from prosecution, and he therefore cannot be considered a fugitive. *Id.* at 24-26. Appellant posits a broader interpretation of the term "fugitive from justice" unreasonably renders "fugitive" an individual who "is not in full flight from apprehension, but is rather simply wanted for a parole violation." *Id.* at 27. Appellant contends the term should therefore be strictly construed.

Finally, in an argument presented for the first time in this Court, appellant claims there was insufficient evidence to prove a violation of Section 6105(c)(1) because

---

[8] My colleagues in dissent both assert the record was insufficient to prove appellant's fugitive status because there was no evidence appellant was aware he was the subject of a bench warrant. *See* Dissenting Op. at 3-4 (Baer, J.); Dissenting Op. at 21 (Wecht, J.). Notably, appellant himself has never claimed he was unaware of the existence of the bench warrant, and he has only challenged his fugitive status on the grounds he was not in active flight when approached by the officers. In fact, appellant's agreement to enter into a stipulation that he was subject to a bench warrant at the time of his arrest supports a conclusion he was on notice of the bench warrant.

Section 6105(a)(2)(i) provides a "safe-harbor" period of 60 days in which a person may divest himself of a firearm before his statutory disability becomes effective. *See id.* at 29, *citing* 18 Pa.C.S. §6105(a)(2)(i) ("[A] person who is prohibited from possessing, using, controlling, selling, transferring or manufacturing a firearm under paragraph (1) or subsection (b) or (c) shall have a reasonable period of time, not to exceed 60 days from the date of the imposition of the disability under this subsection, in which to sell or transfer that person's firearms to another eligible person who is not a member of the prohibited person's household."). Appellant asserts he was entitled to the protection of this safe-harbor time period because his encounter with the police occurred just eighteen days after the bench warrant was issued and he had an additional forty-two days within which to transfer the gun before he could be classified as a person not to possess a firearm under Section 6105.

The Commonwealth responds there was sufficient evidence to support appellant's conviction under Section 6105 because appellant stipulated he was subject to an active bench warrant. The Commonwealth emphasizes this Court, when reviewing a sufficiency claim, must view the evidence in the light most favorable to the Commonwealth as verdict winner to determine whether the evidence supports the material elements of the crime charged. *See* Commonwealth's Brief at 8. The Commonwealth notes in order to prove a defendant committed the crime codified at Section 6105, it must establish: "(1) that [he] has been convicted of an offense listed in Subsection (b) and/or falls into one of the categories of Subsection (c); and (2) that [he] possesses or otherwise controls a firearm." *Id.* at 9, *quoting Commonwealth v. Alvarez-Herrera*, 35 A.3d 1216, 1218 (Pa. Super. 2011). The Commonwealth contends it satisfied both of these elements, observing: (1) the jury found appellant guilty of Section 6106, *i.e.* that he was in possession of a firearm without a license; and (2) appellant falls

under the categories in subsection (c) because, consistent with his stipulation that a bench warrant had been issued against him, appellant was a fugitive from justice. *Id.* at 9-10.

The Commonwealth further contends appellant failed to preserve his argument based on the Section 6105(a)(2)(i) safe harbor. *Id.* at 13. The Commonwealth explains the safe-harbor provision is not an element of the crime codified at Section 6105, but rather an affirmative defense to that crime. The Commonwealth claims the sufficiency of the evidence it presented to support a violation of Section 6105 is not undermined by the fact it did not also refute a defense never raised by appellant.

Although the Commonwealth insists the stipulation is sufficient evidence to support appellant's conviction under Section 6105(c)(1), it nevertheless emphasizes the rules of statutory construction provide further support for its position that the issuance of a bench warrant means a defendant is a "fugitive from justice" for purposes of the statute. The Commonwealth notes the most recent version of Black's Law Dictionary does not define "fugitive from justice," but defines "fugitive" as follows:

> (1) Someone who flees or escapes; a refugee.
>
> (2) A criminal suspect or a witness in a criminal case who flees, evades, or escapes arrest, prosecution, imprisonment, service of process, or the giving of testimony, esp. by fleeing the jurisdiction or by hiding.

Commonwealth's Brief at 15, *quoting* BLACK'S LAW DICTIONARY (11th ed. 2019). The Commonwealth asserts neither this definition, nor the 1979 definition relied upon by appellant, requires an individual to flee the jurisdiction to be a fugitive from justice; one who simply evades prosecution is also a "fugitive." The Commonwealth submits this interpretation is consistent with Section 6105(c)(1), which was intended to "prohibit certain persons from possessing a firearm **within this Commonwealth**." *Id.* at 16,

*quoting Commonwealth v. Baxter*, 956 A.2d 465, 471 (Pa. Super. 2008) (*en banc*) (emphasis supplied by Commonwealth).

Additionally, although the Commonwealth considers the terms of Section 6105(c)(1) to be clear and unambiguous, it notes the statute's legislative history supports its view of the terms' meaning. *Id.* at 17, *citing* 1 Pa.C.S. §1921(c)(5), (7) (legislative history can explain legislative intent). The Commonwealth notes that in 1998, the General Assembly amended Section 6105(c)(2) to specifically exclude from its purview "individual[s] whose fugitive status is based upon a nonmoving or moving summary offense under Title 75 (relating to vehicles)." *Id.* at 18, *citing* 18 Pa.C.S. §6105(c)(1). The Commonwealth further notes Section 6105 was amended eight more times without changing subsection (c)(1); according to the Commonwealth, had the General Assembly intended the meaning of fugitive to exclude those under a bench warrant, it would have explicitly excluded those individuals as it did fugitives with summary traffic offenses.

Finally, the Commonwealth argues an interpretation of "fugitive from justice" that includes those subject to active bench warrants furthers the UFA's goal of "regulat[ing] the possession and distribution of firearms, which are highly dangerous and [are frequently] used in the commission of crimes." *Id.* at 19, *quoting Commonwealth v. Corradino*, 588 A.2d 936, 940 (Pa. Super. 1991). The Commonwealth reasons that individuals subject to an outstanding bench warrant present a danger to police officers because they have demonstrated a contempt for or non-compliance with the criminal justice system. *Id.* at 20, *citing Commonwealth v. Houser*, 18 A.3d 1128, 1131-32 (Pa. 2011).

We begin our analysis by noting the limited question before us is whether the evidence at trial was sufficient to sustain appellant's conviction for violation of Section

6105 of the UFA.[9]  We view the evidence in the light most favorable to the Commonwealth as verdict winner to determine if it was sufficient to establish each element of the offense.  One way the Commonwealth may prove a violation of Section 6105 is to show:  (1) the defendant possessed a firearm, 18 Pa.C.S. §6105(a), and he was prohibited from possessing the firearm due to being a fugitive from justice, 18 Pa.C.S. §6105(c)(1).  As the jury in this case found appellant guilty of possessing a firearm without a license under Section 6106 of the UFA, the element of possession under subsection 6105(a) is unquestionably satisfied.  In addition, the parties stipulated that, at the time of the April 21, 2014 incident, appellant was subject to an active bench warrant.  We now consider whether the active bench warrant at issue in this case as stipulated by the parties sufficed to render appellant a "fugitive from justice" such that he was a person "not to possess a firearm" under Section 6105.

Appellant and the Commonwealth forward opposing definitions of the operative term "fugitive from justice," and to the extent this suggests the term is ambiguous, we are guided by the Statutory Construction Act of 1972, 1 Pa.C.S. §§1501-1991.  The main tenet of statutory construction is "[t]he object of all interpretation and construction of

---

[9] Despite our narrow focus here, both dissenting Justices express concerns about broader applications.  *See* Dissenting Op. at 2-3 (Baer, J.) (discussing non-criminal circumstances under which a bench warrant could issue unbeknownst to individual); Dissenting Op. at 9 (Wecht, J.) (theorizing that party to a child custody suit with a bench warrant due to missing child support payment or conference would be classified as a fugitive and prosecuted for possessing a firearm).  Respectfully, these examples tend toward the hyperbolic and misconstrue our holding.  Moreover, my dissenting colleagues mischaracterize our holding as creating a "rigid" "*per se*" rule.  *See* Dissenting Op. at 1 (Baer, J.); Dissenting Op. at 11 (Wecht, J.).  In fact, our decision is grounded on the parties' stipulation that expressly referenced the criminal docket from which the bench warrant issued; as such, our conclusion appellant was a fugitive from justice arises from a principled consideration of that stipulation rather than an "unmistakable consequence" of it. Dissenting Op. at 11 (Wecht, J.).  While the point that a bench warrant may at times not be "tethered to one's commission of a criminal act" is well taken, *id.* at 10, it is irrelevant here where the stipulated facts indicate the bench warrant issued in a criminal case.  *See* N.T. 10/14/16 at 21, 23.

statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. §1921(a).  It is well-settled that "[t]he General Assembly's intent is best expressed through the plain language of the statute." *Commonwealth v. Brown*, 981 A.2d 893, 897 (Pa. 2009) (citation omitted); *see also Commonwealth v. Shiffler*, 879 A.2d 185, 189 (Pa. 2005).  As the legislature did not define the term fugitive from justice in the UFA, its common and approved usage may be ascertained by examining its dictionary definition. *See Fogle v. Malvern Courts, Inc.*, 722 A.2d 680, 682 (Pa. 1999) ("We have generally used dictionaries as source material for determining the common and approved usage of a term.") (citation omitted); *see also Philadelphia Eagles Football Club, Inc. v. City of Philadelphia*, 823 A.2d 108, 127 (Pa. 2003) (relying on Black's Law Dictionary for definition of "royalty" not defined in statute or code).  As we have seen, Black's Law Dictionary defines fugitive as:

> (1) Someone who flees or escapes; a refugee.
>
> (2) A criminal suspect or a witness in a criminal case who flees, evades, or escapes arrest, prosecution, imprisonment, service of process, or the giving of testimony, esp. by fleeing the jurisdiction or hiding

BLACK'S LAW DICTIONARY (9th ed. 2009), 741; *see also* Commonwealth's Brief at 15, *quoting* BLACK'S LAW DICTIONARY (11th ed. 2019).  In addition, Merriam-Webster's Dictionary defines "fugitive" as:

> (1) a person who flees or tries to escape: such as
>
>> (a) a person who flees a country or location to escape danger (such as war) or persecution : REFUGEE
>>
>> (b) a person (such as a suspect, witness or defendant) involved in a criminal case who tries to elude law enforcement especially by fleeing the jurisdiction
>>
>> — called also *fugitive from justice*

https://www.merriam-webster.com/dictionary/fugitive?src=search-dict-box (last visited July 14, 2020).

The foregoing definitions make clear that the terms "fugitive" and "fugitive from justice" are synonymous for our present purposes and include someone who evades the law or prosecution, and/or an individual in a criminal case who simply eludes law enforcement. In addition, our Rules of Civil Procedure provide a bench warrant may be issued by a court when a party fails to appear at a required hearing or court-mandated appointment, *i.e.* when the individual fails to comply with a court order to appear. *See* Pa.R.C.P. 1910.13-1 (court may issue bench warrant for arrest for failure to appear pursuant to order of court). Consequently, a bench warrant issues only when an individual does not appear when required, and thus acts to elude or evade law enforcement or prosecution. It logically follows that an individual who evades law enforcement such that a bench warrant is issued — as appellant stipulated to doing here — is a fugitive as that term is commonly defined.[10]

_____

[10] Justice Wecht riffs, without any support whatsoever, that our holding "automatically would deem any and all individuals to be 'fugitives from justice' upon the mere issuance of a bench warrant[.]" Dissenting Op. at 13 (Wecht, J.). Justice Wecht simply refuses to acknowledge the effect of the stipulation between appellant and the Commonwealth, going so far as to delete our reference to it while quoting this opinion, essentially wishing it out of existence. *Id.* at 8, *quoting* Majority Op. at 13. Despite this magical thinking, the stipulation not only exists, but it confirms the facts of a criminal bench warrant and that appellant was ineligible to possess the firearm. *See* N.T. 10/14/16 at 23. Moreover, Justice Wecht's complaint about the "scant record[,]" *see* Dissenting Op. at 13 (Wecht, J.), misses the point that the stipulation obviated the need to make a record to prove certain underlying facts. *See, e.g., Commonwealth v. Mitchell*, 902 A.2d 430, 460 (Pa. 2006) ("A stipulation is a declaration that the fact agreed upon is proven[.]") (additional citations omitted). Justice Baer also criticizes the sufficiency of the evidence, which consists almost entirely of the stipulation without separate evidence of appellant's knowledge that he was subject to an outstanding warrant. *See* Dissenting Op. at 3-4 (Baer, J.). Under the circumstances, this argument that the Commonwealth failed to carry its burden is disingenuous and fails to acknowledge the force and impact of a stipulation. By agreeing to the stipulation, appellant also assented to the facts supporting it, and obviated the Commonwealth's burden to demonstrate that underlying fact. *See,*

We reject appellant's related argument he cannot be a "fugitive from justice" when he was merely sitting in a van in his hometown rather than "fleeing" from the authorities. Although one may be a "fugitive" "by fleeing the jurisdiction or hiding," these are clearly not the exclusive means by which one qualifies as a fugitive. Indeed, it would be illogical to consider someone a fugitive only if he actively flees from authorities, as we would be ignoring simple "evasion" of law enforcement that is no less problematic in the legislative scheme codified by Section 6105. Indeed, in the present factual scenario, appellant was not actively fleeing, but nevertheless engaged in activity that necessitated police intervention, and eventually revealed the active bench warrant. Appellant's failure to comply with reporting requirements was an evasion of law enforcement, such that he

---

*e.g.*, *Phillips v. Schoenberger*, 534 A.2d 1075, 1079 (Pa. Super. 1987) (underlying facts of stipulation are to "be accepted as undisputed and require **no further proofs** and will permit no contradictory evidence") (emphasis added); *see also Commonwealth v. Padilla*, 80 A.3d 1238, 1272 (Pa. 2013) (stipulation alone provided sufficient proof to support aggravating factor); *Mead Johnson & Co. v. Breggar,* 189 A.2d 866, 868 (Pa. 1963) (finding no need for proofs of matters upon which the parties stipulated); *In re Eakin*, 150 A.3d 1042, 1047 (Pa. Ct. Jud. Disc. 2016) ("[W]here the parties enter into stipulations of fact which are accepted by the Court, the facts so stipulated will be considered to have been proven as if the party bearing the burden of proof has produced **clear and convincing** evidence") (emphasis supplied) (additional citations omitted). In this case, the parties clearly did not ignore the scienter requirement under the UFA; the requirement was satisfied when appellant agreed to the stipulation. Nor are we "enlarging" or "supplementing" the terms of the stipulation as entered by the parties, but simply giving it the effect intended by the parties. *See* Dissenting Op. at 13 (Wecht. J.). Notably, the trial court specifically acknowledged appellant "clearly was on notice" of the charge that he was prohibited from carrying a firearm under Section 6105 of the UFA "if he stipulated to the fact." N.T. 10/14/16 at 24. Moreover, appellant has never challenged the propriety of the stipulation, claimed he lacked knowledge of the existence of the bench warrant, or argued the bench warrant was insufficient to support the charge under the UFA.

was a "fugitive from justice" despite not running away when police officers approached him.

Our conclusion is further supported by the fact the General Assembly did not limit the term "fugitive from justice" to those in actual flight. As noted by the Commonwealth, the statute was amended in 1998 to expressly exclude individuals "whose fugitive status is based upon a nonmoving or moving summary offense under [the Vehicle Code]" from the purview of Section 6105(c)(1). And, although there have been nine additional amendments to Section 6105 since 1998, the General Assembly has never limited its scope to actively fleeing individuals.

Accordingly, we hold appellant was a "fugitive from justice" for purposes of Section 6105(c)(1) of the UFA and the Superior Court did not err in affirming the judgment of sentence.[11]

Order affirmed.

Chief Justice Saylor and Justices Todd and Mundy join the opinion.

Justice Baer files a dissenting opinion in which Justice Donohue joins.

Justice Wecht files a dissenting opinion.

---

[11] We need not reach appellant's Section 6105(a)(2)(i) "safe harbor" claim. Not only is the claim ostensibly waived — it was raised for the first time in this Court — but we limited our review to the question of whether appellant was a "fugitive from justice."