**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**AIRCRAFT SERVICE**
**INTERNATIONAL GROUP, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 14, 2006.

Filed Jan. 10, 2007.

Reargument Denied March 19, 2007.

Lev Kalman, Philadelphia, for appellant.

Tyler Brody, Asst. Dist. Atty., Philadelphia, for Com., appellee.

BEFORE: STEVENS, KLEIN and PANELLA, JJ.

OPINION BY KLEIN, J.:

¶ 1 Appellant Aircraft Service International Group appeals from its conviction for various Traffic Code offenses[1] after its jet fuel truck overturned on either a service road or taxiway[2] at Philadelphia International Airport. Because we find that this is not a "highway" within the definition of the Vehicle Code we reverse.

■ ¶ 2 The facts in this case are not in dispute. Appellant's jet fuel truck had bad brakes and springs, causing it to overturn. It overturned either on the taxiway or a service road at the Philadelphia Airport. If the roadway where the truck overturned is considered a highway, the conviction stands. If the taxiway or service road is not a highway, the conviction must be overturned. There is a subsidiary issue as to whether it was reversible error to allow a police officer to give his opinion as to whether this was or was not a highway and whether or not a "highway" had to be open to the public.

A. **A taxiway or service road within an airport is not "open to the public" and therefore not a highway under the definitions of the Vehicle Code.**

The definition of a highway in the Vehicle Code, 75 Pa.C.S.A. § 102, is as follows:

---

1. Defendant was convicted of two counts of 75 Pa.C.S. § 4107(b)(2), relating to operating an improperly equipped vehicle, and one count of 75 Pa.C.S. § 3716(b), for causing a vehicle to overturn as a result of equipment violations. These are only offenses against the vehicle code if they occur on a "highway."

2. The record is unclear exactly where the truck overturned. The police officer testified it overturned on the taxiway, while an airport employee testified it was on a service road. The photograph showing the location, though entered into evidence, is not with the official record. It is also possible that both witnesses are simply using different terms to express the same location.

**"Highway."** The entire width between the boundary lines of every way publicly maintained when any part thereof is **open to the use of the public for purposes of vehicular travel.** The term includes a roadway open to the use of the public for vehicular travel on grounds of a college or university or public or private school or public or historical park. (Emphasis added.)

¶ 3 Unlike parking lots, be they public parking garages or parking lots connected to apartment buildings or condominiums, the taxi lanes for airplanes and the service roads at airports are not open to everyone who wishes to drive there. There is a big difference between driving into a public parking garage or the parking lot of a friend's apartment house and breaching security to drive onto a service road, let alone an airplane's taxi lane, at an airport. It is customary for the average citizen to use a public parking garage or to drive onto a parking lot of a condominium to pick up a friend, although those areas are private property. If someone tried to drive onto the service road of the Philadelphia Airport, particularly in the Post–9/11 environment, that person would be arrested. Just as a fenced in factory or warehouse with a security booth do not permit access to the "public," neither does the Philadelphia Airport.

■ ¶ 4 Because this is a penal statute, if there is any ambiguity in the definition of "highway," the statute must be construed strictly and in favor of the defendant. *See* 1 Pa.C.S.A. § 1928(b)(1). A defendant must have fair notice that his conduct is criminal.

¶ 5 The Commonwealth argues that because people get in to airplanes and the airplanes go on taxiways and runways, the taxiway and runway fit the definition of a public highway. That makes no sense. A highway is for use of "motor vehicles" and an airplane is no more a motor vehicle for this purpose than is a subway. A subway, as a vehicle that runs on rails, is exempt from the definition of motor vehicle. *See* Pa.C.S. § 102. Common sense and a brief review of other statutes and case law demonstrate that aircraft are not considered motor vehicles either. *See* 42 Pa.C.S. § 8542 which refers to both motor vehicles and aircraft. If the legislature had meant to include aircraft in the definition of motor vehicles, it would not have needed to specifically mention them in addition to motor vehicles. Further, section 8542 indicates that the legislature knew how to include aircraft into such definitions and did not do so in Title 75. Also, *McBoyle v. United States,* 283 U.S. 25, 51 S.Ct. 340, 75 L.Ed. 816 (1931) specifically held, in interpreting similar language to that found in Title 75, that an airplane is not a motor vehicle. Finally, both the subway and the aircraft use limited access areas to function. It is a commercial carrier that is using the taxiway, tarmac, rail lines, etc., not the general public.[3]

¶ 6 Moreover, we note that the definition of "highway" is different from the definition of "trafficway." Many of the cases cited by the Commonwealth refer to "trafficways" as opposed to "highways." A "trafficway" under the Vehicle Code may not just be "open to the use of the public for purposes of vehicular traffic," but also can be open to the public "as a matter of right and custom."[4] If the legislature had

---

**3.** There are private planes that use Philadelphia International Airport, and probably every other major airport as well. These aircraft are still specially licensed vehicles subject to the strict requirements of federal and state regulation.

**4.** The full definition under 75 Pa.C.S.A. § 102 is: " 'Trafficway.' The entire width between

not meant to differentiate between a "highway" and a "trafficway" it would not have used the different words in different statutes and would not have defined them differently.

¶ 7 When talking about a public highway as opposed to a trafficway, there is no exception for roads that are open to the public "as a matter of right and custom." Moreover, even were there such an exception in the law for highways, there is no right or custom for the average citizen to drive onto the tarmac area of the airport.

¶ 8 A review of the cases cited by the Commonwealth and the trial court shows that none of the cases that consider a parking lot or garage a "trafficway" indicate that the Philadelphia Airport tarmac should be considered a "highway." In fact, we can find no case law involving motor vehicle violations and airport tarmacs.

¶ 9 In any event, the key factor is whether the location is open to the public for vehicular traffic. In *Commonwealth v. McFadden*, 377 Pa.Super. 454, 547 A.2d 774 (1988), McFadden was driving while intoxicated on the private, dead end road leading to his trailer park. The Court distinguished between private roads and public highways or trafficways and said the Commonwealth had not presented sufficient evidence that the road was open to the public, although some visitors might have come into the park.

¶ 10 In *Commonwealth v. Owen*, 397 Pa.Super. 507, 580 A.2d 412 (1990), although stating under some circumstances a parking lot might be considered open to the public for the purposes of the D.U.I. statute, the Commonwealth did not present any evidence as to the nature of the parking lot and the grant of habeas corpus

dismissing the defendant was determined to be proper.

¶ 11 In *Commonwealth v. Zabierowsky*, 730 A.2d 987 (Pa.Super.1999), in a footnote the Court specifically said they were not defining "highway" since the term was inapplicable. What the court found was that a five-story garage open to the public on a daily basis for a fee *was* a "trafficway." That determination could be supported because although it was private property and not open to anyone generally, it was a *trafficway* for the purposes of the Vehicle Code. The key distinction was that although one needed a ticket, the lot was open to the public. They distinguished the case from those situations where a parking area was "expressly designated as 'private' or 'for 'tenants only.' " 730 A.2d at 990.

¶ 12 *Commonwealth v. Cameron*, 447 Pa.Super. 233, 668 A.2d 1163 (1995), relied on by the Commonwealth, is also distinguishable from the instant situation. In *Cameron*, the question was whether the parking lot of the large apartment building met the definition of *trafficway*, not *highway*. Here the fact there was testimony that since the parking lot was used by a number of tenants, as well as guests of tenants, allowed the lot to be considered a trafficway for the purposes of the D.U.I. law. The fact that a large number of people may use the lot can show that under right and custom this could be considered a public use.

¶ 13 In *Cameron*, there was an open lot next to an eleven story apartment building. Although the lot was for tenants, there is no showing that there was any security at the one entrance, although it was posted as restricted for tenants only. When a great number of people can freely drive into the parking lot, this creates a different situa-

property lines or other boundary lines of every way or place of which any part is open to

the public for purposes of vehicular travel as a matter of right or custom."

tion from an airport where entry to the tarmac area is strictly controlled. A parking lot is not an airport.

¶ 14 We also note the uncontradicted testimony of Gino Matteoni, the Health, Safety and Environmental Manager for the Philadelphia Airport, which indicates that the service road in question is basically a road to nowhere, going between the tarmac area to the parking lot[5] and top-off island. *See* N.T. 1/24/06 at 15. Moreover, the area is posted as restricted and that use is strictly limited to those who have proper airport identification which can only be obtained by getting fingerprinted and attending several classes. *Id.* at 16.

■ ¶ 15 Further, while an airport may well be designated as "open to the public" or "for public use," it does not necessarily follow that the whole airport is so designated. There are any number of cases that limit the "public" nature of various buildings or areas. For example, an airport is not public *fora* for First Amendment purposes. *See International Society for Krishna Consciousness, Inc. v. Lee,* 505 U.S. 672, 112 S.Ct. 2711, 120 L.Ed.2d 541 (1992). In fact, an airport is among those publicly owned facilities that could be closed to all except those who have legitimate business there. *Id., citing United States v. Grace,* 461 U.S. 171, 103 S.Ct. 1702, 1707, 75 L.Ed.2d 736 (1983). Similarly, post offices and military installations are both subject to limitations as to their "public" nature. *See United States v. Kokinda,* 497 U.S. 720, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990); *Greer v. Spock,* 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976). *Greer* even references the fact that only certain areas of a military installation are "open the public," indicating the ability of large locations, such as an air-

port, to withhold the "public" nature of certain portions of the facility. By restricting access to the tarmac and service roads of the airport to only those people who have been fingerprinted and attended classes, the airport has effectively rendered those areas non-public.

¶ 16 Judgment of sentence reversed and case remanded to discharge the defendant. Jurisdiction relinquished.

¶ 17 STEVENS, J., notes his dissent.

---

**5.** Matteoni also testified that U.S. Airway Express uses the parking lot to de-ice its planes. *Id.* It cannot be seriously claimed that an area where aircraft are de-iced is open to the public or is for public use.