## COMMONWEALTH of Pennsylvania, Appellant

v.

## John W. WYLAND, Appellee.

Superior Court of Pennsylvania.

Submitted Aug. 25, 2009.
Filed Jan. 5, 2010.

Kevin Francis McCarthy, Assistant District Attorney, Pittsburgh, for Commonwealth, appellant.

Lee M. Rothman, Pittsburgh, for appellee.

BEFORE: BENDER, BOWES and CLELAND, JJ.

OPINION BY BOWES, J.:

¶ 1 The Commonwealth appeals from the July 16, 2008 order granting a motion to quash a criminal complaint charging John Wyland with drunk-driving offenses for events that occurred on an air base occupied and controlled by the United States Air Force. After careful review, we affirm.

¶ 2 The record indicates that on November 30, 2007, Appellee was charged with two counts of driving under the influence of alcohol following an incident that occurred at the 911th Airlift Wing, a United States Air Force installation located in Moon Township, Pennsylvania. The charges were dismissed by a magisterial district judge, but the Commonwealth later refiled them. Thereafter, Appellee filed a motion to quash the complaint and requested a hearing, which was conducted on July 16, 2008.

¶ 3 At the outset, the parties stipulated that Appellee had been arrested for driving under the influence ("DUI") on the day in question, that he was observed driving a vehicle on the Air Force base, and that a blood test subsequently revealed that his blood alcohol level was 0.124%. The parties also stipulated that Appellee was not driving on a highway at the time of the incident and that he could only be convicted of DUI if the court determined that Appellee had operated a motor vehicle on a trafficway.[1] *See* N.T. Hearing, 7/16/08, at 3–4. The trial court then heard testimony from

---

1. Chapter 38 of the Motor Vehicle Code, which prohibits driving after imbibing alcohol or ingesting drugs, applies to "highways and trafficways throughout this Commonwealth." 75 Pa.C.S. § 3101(b).

two witnesses: Robert Moeslein and Air Force Major John Bojanac.

¶ 4 Mr. Moeslein has been employed as a civil engineer at the base for twenty-one years, and he is responsible for maintaining all of the military facilities there. He testified that the installation is located on 12 acres of land owned by the federal government and 103 acres of land that the government leases from Allegheny County under an agreement which grants the government "exclusive use" of the property; however, the county is obligated to maintain the runway, remove snow at the airport, and provide fire rescue services pursuant to a separate contract. *Id.* at 16. Although it is a military installation, Mr. Moeslein testified that civil engineering projects are sometimes awarded to civilian contractors, and two utility companies operate on the base: Duquesne Light Company owns a substation near the dining hall, and People's Natural Gas operates a facility adjacent to the fitness center. Thus, many civilians enter the installation on a daily basis.

¶ 5 With respect to security, Mr. Moeslein explained that no one is allowed to enter the base without permission from the commanding officer or security personnel who have authority to admit pre-approved visitors that can produce valid identification. *Id.* at 18–20. Therefore, although civilians frequently enter the base, which is secured by a fence topped with barbed wire, they do so only with the express approval of United States Air Force personnel and are advised that while visiting the installation, their person and any property under their control are subject to search. *Id.* at 23.

¶ 6 Major Bojanac, who is the chief of security at the base, offered similar testimony. He confirmed that civilians and retired military personnel regularly enter the base for work, athletic contests, Boy Scout activities, Civil Air Patrol training, and functions held at the Officers' club, which can be rented for wedding receptions. *Id.* at 31–34. The major also acknowledged that the Air Force executed an agreement with the Moon Township Police Department authorizing local police to assist military officers in responding to incidents occurring on the installation. *Id.* at 34–35. However, the names of all non-military personnel who seek to enter the base must be submitted to Major Bojanac in advance, and they must receive security clearance or they will be denied entry at the main checkpoint. *Id.* at 36.

¶ 7 At the conclusion of the hearing, the trial court granted Appellee's motion on the basis that "the roadways maintained within the confines of the 911th Airlift Wing are not open to the public for purposes of vehicular traffic as a matter of right or custom." Trial Court Opinion, 9/10/08, at 3. In so doing, the court found that this case was similar to *Commonwealth v. Aircraft Service International Group*, 917 A.2d 328 (Pa.Super.2007), where this Court held that a company could not be prosecuted for Motor Vehicle Code infractions that were discovered after a fuel truck overturned on a service road at Philadelphia International Airport because access to the service road was "strictly limited" to individuals with "proper airport identification." *Id.* at 332. This timely appeal followed.

The decision to grant a motion to quash a criminal information or indictment "is within the sound discretion of the trial judge and will be reversed on appeal only where there has been a clear abuse of discretion." *Commonwealth v. Brown*, 423 Pa.Super. 264, 620 A.2d 1213, 1214 (Pa.Super.1993) (quoting *Commonwealth v. Niemetz*, 282 Pa.Super. 431, 422 A.2d 1369, 1373 (Pa.Super.1980)). Discretion is abused when

the course pursued by the trial court represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will. *Commonwealth v. Smith*, 545 Pa. 487, [491,] 681 A.2d 1288, 1290 (Pa.1996).

*Commonwealth v. Weigle*, 949 A.2d 899, 902 (Pa.Super.2008) (quoting *Commonwealth v. Lebron*, 765 A.2d 293, 294–295 (Pa.Super.2000)).

■ ¶ 8 The sole issue herein is whether the trial court erred in concluding that none of the roads that traverse the Air Force base constitutes a trafficway, which is defined in 75 Pa.C.S. § 102 as "[t]he entire width between property lines or other boundary lines of every way or place of which any part is open to the public for purposes of vehicular travel as a matter of right or custom." As noted *supra*, the trial court reasoned that the roads in question do not fall within that definition because they are located on a military installation with strict security regulations, and non-military personnel may not enter the base and drive through the area as a matter of right or custom.

¶ 9 The Commonwealth argues that the trial court's ruling is manifestly unreasonable because the testimony presented at the July 16, 2008 hearing establishes that civilians regularly enter the base and use its roads. In light of that evidence, the Commonwealth maintains that the installation is "open to the public" for purposes of the DUI statute, notwithstanding the fact that non-military personnel must obtain a security clearance from Major Bojanac in order to gain entry. Commonwealth brief at 14. Due to the fact that civilians frequently drive onto the base, the Commonwealth asserts that this case is distinguishable from *Commonwealth v.*

*Aircraft Service International Group, supra*, and should be decided in accordance with legal principles applicable to restricted parking areas.

¶ 10 The Commonwealth relies upon this Court's decisions in *Commonwealth v. Cameron*, 447 Pa.Super. 233, 668 A.2d 1163 (1995), and *Commonwealth v. Zabierowsky*, 730 A.2d 987 (Pa.Super.1999). The defendant in *Cameron* was convicted of DUI based on evidence that he drove through a private parking lot while intoxicated. He appealed his conviction, arguing that the lot, which was "posted as restricted for tenants only" and had assigned parking spaces, was not a trafficway as defined in 75 Pa.C.S. § 102. *Id.* at 1164. We rejected that argument, observing that "tenants, employees, and others who have the advantage of a restricted parking facility still deserve and expect to be protected from incidents involving serious traffic offenses." *Id.* Accordingly, the *Cameron* Court held that "the public use component of Section 102 can be satisfied even where access to a parking lot is restricted, but where there are a sufficient number of users, such as presented in the matter before us involving a parking lot located adjacent to an eleven-story apartment building." *Id.*

¶ 11 In *Zabierowsky*, the defendant was convicted of DUI following an incident that occurred inside Pittsburgh's Third Avenue Parking Garage, a five-story facility that offers 565 parking spaces to the general public in exchange for a fee. On appeal, he claimed that the garage could not be characterized as a trafficway because it utilized a fee-based rental arrangement, which limited entry to paying customers and thus precluded a finding that the facility was open to the public as a matter of right or custom. Citing *Cameron, supra*, we upheld the defendant's conviction and explained that monetary restrictions at

public parking facilities do not alter the conclusion that those areas are open to the public. *Id.* at 990.

¶ 12 Although *Cameron* and *Zabierowsky* dealt with parking facilities, the Commonwealth asserts that those decisions are instructive because they indicate that frequent use of a restricted area by the general public is sufficient to designate the area as a trafficway under section 102. Applying that principle herein, the Commonwealth contends that evidence of civilian motorists entering a military installation on a regular basis satisfies the public use component of section 102. Appellee counters that this argument ignores the fact that those motorists are not free to enter the base as a matter of right or custom; rather, they must all stop at the perimeter security checkpoint, show proper identification, and establish that they were cleared to enter the facility by the chief of security, Major Bojanac. Due to these strict regulations, Appellee maintains that the base, like the airport service road in *Commonwealth v. Aircraft Service International Group,* is an "incredibly restricted area" that is clearly not open to the general public. Appellee's brief at 9. Indeed, Major Bojanac stated that security has always been a priority at the installation and that entry requirements have become even more stringent following the September 11, 2001 terrorist attacks. *See* N.T. Hearing, 7/16/08, at 40–42.

¶ 13 Upon review, we agree with Appellee's position. Contrary to the Commonwealth's view, the instant case is readily distinguishable from *Cameron* and *Zabierowsky* because it involves a heavily-guarded military installation, not a private parking area that can be accessed by the general public as a matter of right or custom. Members of the public can circumvent posted entry restrictions at a private parking lot that serves a business or residential building, and public parking garages are open to anyone who agrees to pay a nominal fee.

¶ 14 The testimony herein establishes that no one enters the 911th Airlift Wing without prior authorization from the chief of security, who screens every individual who requests access to the base. Civilians permitted to enter the base do so for a stated, approved purpose and are subject to search at the discretion of security officers who constantly monitor the facility. Given these facts, it cannot be legitimately maintained that the base is open to the public as a matter of right or custom. Hence, we agree with the trial court that this case is analogous to *Commonwealth v. Aircraft Service International Group* and reject the Commonwealth's position.

¶ 15 Order affirmed.