J-A07032-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| VANN BRIDGEFORD | : | |
| | : | |
| Appellant | : | No. 670 EDA 2021 |

Appeal from the Judgment of Sentence Entered March 3, 2021
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0002150-2020

BEFORE: DUBOW, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED MAY 13, 2022**

Appellant, Vann Bridgeford, appeals from the judgment of sentence entered in the Montgomery County Court of Common Pleas, following his bench trial conviction for driving under the influence ("DUI").[1]  We affirm.

The trial court set forth the relevant facts and procedural history of this case as follows:

> On December 22, 2019, at approximately 1:40 am, Lavar Stevens ("Mr. Stevens"), a security guard at The Wyncote Towers for Cardinal Point, located at 8470 Limekiln Pike, in Cheltenham Township, Montgomery County, received a call that an individual, later identified as [Appellant], had run his vehicle into the metal garage door of Building Two. Responding immediately, Mr. Stevens arrived at the lobby level garage entryway of Building Two to find [Appellant], seated behind the wheel of his still-running Porsche Panamera which had been driven into the Building's garage door.  After asking [Appellant] if he was alright, Mr. Stevens

_____

[1] 75 Pa.C.S.A. § 3802(a)(1).

asked [Appellant], the sole occupant of the vehicle, to shut the vehicle's engine off. Returning to his security rover to contact police and write up a report of the incident, Mr. Stevens heard [Appellant] restart his vehicle, and turned to observe [Appellant] reverse, and then drive his vehicle again into the garage door. Alarmed by [Appellant]'s behavior, Mr. Stevens immediately called 911 and the police arrived minutes later.

Upon arrival, Officers Nicholas O'Connor ("Ofc. O'Connor") and Dave Choi ("Ofc. Choi") of the Cheltenham Township Police Department spoke briefly with Mr. Stevens before approaching [Appellant], still seated behind the wheel of his vehicle, impacting the garage door as a result of which was crushed at the bottom. Upon reaching [Appellant]'s open driver side window, Ofc. O'Connor observed that, in addition to exhibiting telltale signs of alcohol intoxication, including bloodshot eyes, heavily slurred speech, a disheveled appearance, and an odor [of] alcohol, [Appellant]'s pants were also inexplicably wet and he appeared baffled and perplexed by the circumstances in which he found himself. During the interaction, [Appellant], whose speech was slurred, appeared to be on his cell speaking with someone, continued his call while Ofc. O'Connor attempted to learn [Appellant]'s identity and what had happened. He also repeatedly asked [Appellant] for his license and registration to no avail, and instead, [Appellant] responded incorrectly that his name was "Shawn," and was unable to explain how his vehicle had crashed into the lowered garage door.

Following the initial interaction, [Appellant] departed the vehicle where he almost stumbled into Ofc. O'Connor. [Appellant], unsteady on his feet, was assisted to the police cruiser which furthered Ofc. O'Connor's belief of [Appellant]'s intoxication. Ultimately, [Appellant] admitted both that he had been drinking a few hours earlier at the residence of his mother, located at 4945 Fairhill Street, Philadelphia, and left her home after midnight, to drive back to the Towers where he lives with his girlfriend. Ofc. O'Connor did not conduct any field sobriety test at the time because [Appellant] clearly displayed signs of intoxication and the potential danger of [Appellant] harming himself when performing the test. Given [Appellant]'s unsteady gate, disheveled appearance, slurred speech, bloodshot

eyes, and odor of alcohol, Ofc. O'Connor determined, based on his experience and training that [Appellant] was incapable of safely operating a motor vehicle and proceeded to place [Appellant] under arrest for driving under the influence. Once in the police cruiser, Ofc. O'Connor read [Appellant] the PennDOT DL-26 form twice.

(Trial Court Opinion, filed June 25, 2021, at 1-3). On March 3, 2021, following a bench trial, the court convicted Appellant of DUI and sentenced him to 48 hours of house arrest. Appellant timely filed a notice of appeal on March 26, 2021. On April 14, 2021, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and Appellant timely complied on May 27, 2021.

Appellant now raises one issue for our review:

Whether the Commonwealth failed to present sufficient evidence to sustain a conviction for 75 Pa.C.S. § 3802(a)(1), Driving Under the Influence (DUI), where the Commonwealth did not introduce evidence to establish that Appellant drove on a "Highway" or "Trafficway" while intoxicated or impaired, as required under 75 Pa.C.S. § 3101, and as those terms are defined by 75 Pa.C.S. § 102.

(Appellant's Brief at 4).

Appellant argues that the area in which he was found operating his car while intoxicated is not open to the public for vehicle traffic and can only be accessed via key card or permission from security. Therefore, Appellant avers that the area is not a "highway" or "trafficway" as defined by Section 102 of the Motor Vehicle Code, but more akin to a private road or driveway. Appellant maintains that there was insufficient evidence to establish that he drove his vehicle outside of this private area while intoxicated. Appellant stresses that

- 3 -

the Commonwealth presented no evidence that he was intoxicated such that he was rendered incapable of safely driving a vehicle when he was driving on a public road. Appellant concludes the Commonwealth presented insufficient evidence to establish that he drove while intoxicated on a highway or trafficway which is a material element of DUI, and this Court must vacate his judgment of sentence. We disagree.

Our standard and scope of review in this case are as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005) (quoting

*Commonwealth v. Bullick*, 830 A.2d 998, 1000 (Pa.Super. 2003)).

The Motor Vehicle Code defines the offense of DUI—general impairment as follows:

**§ 3802. Driving under influence of alcohol or controlled substance**

(a) General impairment.—

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(a)(1).

Section 3101 of the Motor Vehicle Code provides that: "The provisions of…Chapter 38 (relating to driving after imbibing alcohol or utilizing drugs) shall apply upon highways and trafficways throughout this Commonwealth." 75 Pa.C.S.A. § 3101. Thus, an essential element of DUI is that a vehicle has been operated on a highway or trafficway while the operator of the vehicle is under the influence of alcohol. *See Commonwealth v. Zabierowsky*, 730 A.2d 987, 989 (Pa.Super. 1999). The Motor Vehicle Code defines "highway" and "trafficway" as follows:

**§ 102. Definitions**

Subject to additional definitions contained in subsequent provisions of this title which are applicable to specific provisions of this title, the following words and phrases when used in this title shall have, unless the context clearly indicates otherwise, the meanings given to them in this section:

\* \* \*

**"Highway."** The entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel.

> The term includes a roadway open to the use of the public for vehicular travel on grounds of a college or university or public or private school or public or historical park.
>
> * * *
>
> **"Trafficway."** The entire width between property lines or other boundary lines of every way or place of which any part is open to the public for purposes of vehicular travel as a matter of right or custom.

75 Pa.C.S.A. § 102.

"Pennsylvania law recognizes that roadways in private areas, or areas restricted to permit-holders, can still meet the 'public use' requirement for purposes of Sections 3101, 102 and the DUI statute." *Commonwealth v. Lees*, 135 A.3d 185, 189 (Pa.Super. 2016). "Even if restricted by signs, if a parking lot is used by members of the public, it is a trafficway for purposes of 75 Pa.C.S.A. § 3101." *Commonwealth v. Wilson*, 553 A.2d 452, 454 (Pa.Super. 1989), *appeal denied*, 522 Pa. 603, 562 A.2d 826 (1989) (affirming DUI conviction where intoxicated driver operated vehicle within private Elks Club parking lot).

Further, "Subsection (a)(1) [of the DUI statute] is a general provision and provides no specific restraint upon the Commonwealth in the manner in which it may prove that an accused operated a vehicle under the influence of alcohol to a degree which rendered him incapable of safe driving." *Commonwealth v. Loeper*, 541 Pa. 393, 402-03, 663 A.2d 669, 673-74 (1995). Further:

> The types of evidence that the Commonwealth may proffer

in a subsection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech. Blood alcohol level may be added to this list, although it is not necessary....

* * *

Regardless of the type of evidence that the Commonwealth proffers to support its case, the focus of subsection 3802(a)(1) remains on the inability of the individual to drive safely due to consumption of alcohol—not on a particular blood alcohol level.

***Commonwealth v. Segida***, 604 Pa. 103, 115-16, 985 A.2d 871, 879 (2009).

Instantly, the trial court concluded that the parking area where Appellant drove his car while intoxicated was a "trafficway".[2] The Commonwealth presented evidence that the area where Appellant was operating his vehicle was a common space between three large apartment buildings. Each apartment building has approximately thirteen floors and the residents of all three buildings regularly use the road where Appellant was driving. Further, although access to the area was restricted to those who have an authorized keycard, guests of residents and delivery workers were also permitted to enter and use the road. Based on the forgoing evidence, we discern no error in the trial court's determination that the Commonwealth

_____

[2] Appellant does not dispute that he was intoxicated such that he was incapable of operating a vehicle safely while in the parking area of his apartment complex.

- 7 -

presented sufficient evidence to meet the public use requirement of Section 102.[3]  *See Commonwealth v. Cameron*, 668 A.2d 1163 (Pa.Super. 1995) (holding parking lot adjacent to large apartment building where access was restricted to tenants satisfied "public use" requirement of Section 102 where sufficient number of users, such as guests of tenants and occasional third persons, would use lot; tenants, employees, and others who have advantage of restricted parking facility still deserve and expect to be protected from incidents involving serious traffic offenses).

Further, the trial court found that there was sufficient circumstantial evidence to conclude that Appellant drove on public roads outside of his apartment complex while intoxicated.  Appellant admitted that he drank wine at his mother's house which was approximately 20 minutes from his apartment.  There was no evidence that Appellant consumed alcohol anywhere other than his mother's house.  Appellant further stated that he left his

---

[3] Appellant asserts that this case is controlled by *Commonwealth v. McFadden*, 547 A.2d 774 (Pa.Super. 1988) (holding Commonwealth failed to present sufficient evidence to establish that dead-end road used by residents of trailer park was "trafficway" as defined by Section 102).  We note that *McFadden* predates *Cameron* and is a non-binding plurality decision. Appellant also relies on *Commonwealth v. Wyland*, 987 A.2d 802 (Pa.Super. 2010), *appeal denied*, 608 Pa. 623, 8 A.3d 346 (2010) for the proposition that roads with access restricted by security and keycards are not "trafficways."  However, *Wyland* involved a road within a heavily guarded military installation.  The facts of this case are much more analogous to *Cameron* which involved the parking lot of a large apartment complex with limited access to non-tenants.  As such, neither *McFadden* nor *Wyland* are controlling in the instant matter.

mother's house after midnight and drove to his apartment. Shortly after 1:00 a.m., Appellant crashed his vehicle into the parking garage door at his apartment complex. The security guard who responded to the incident found Appellant alone in his vehicle with the engine still running. The security guard observed Appellant crash into the garage door again and believed that Appellant was intoxicated. The responding police officer observed that Appellant had bloodshot eyes, heavily slurred speech, smelled of alcohol, was unresponsive to questioning, and unsteady on his feet. The officer further determined that Appellant so clearly displayed signs of intoxication that it was unnecessary to perform field sobriety tests out of concern that Appellant would hurt himself. *See Segida, supra.*

Based on this evidence, the trial court concluded that Appellant drove while intoxicated from his mother's house to his apartment. Viewed in the light most favorable to the Commonwealth as the verdict winner, the Commonwealth presented sufficient circumstantial evidence to sustain Appellant's conviction for DUI. *See Jones, supra*. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 5/13/2022*